IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IOT INNOVATIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> LEVITON MANUFACTURING CO., INC., <br><br> Defendant. | Civil Action No. 1:23-cv-09902 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this complaint against Leviton Manufacturing Co., Inc. ("Leviton" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, and **Exhibit E**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,801,933 | System And Method For Proactive Caching Employing Graphical Usage Description |
| B. | 7,304,570 | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device |
| C. | 7,379,464 | Personal Digital Gateway |
| D. | 7,394,798 | Push-To Talk Over Ad-Hoc Networks |
| E. | 7,593,428 | Apparatus, And Associated Method, For Forming, And Operating Upon, Multiple-Checksum-Protected Data Packet |

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Leviton is a corporation organized under the laws of the State of Delaware with its principal place of business located at 201 North Service Road, Melville, NY 11747. Leviton maintains a regular place of business where it sells and demonstrates the Accused Products at 60 East Superior Street, Chicago, IL 60611.

5. Leviton may be served through its registered agent for service, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703-4261.

## JURISDICTION AND VENUE

6. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284-85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Illinois Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving

substantial revenue from goods and services provided to individuals in this State and in this District.

10. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District.

11. Defendant maintains regular and established places of business in this District. Defendant offers products and services and conducts business in this District. Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities at locations in this District, including the location at 60 East Superior Street, Chicago, IL 60611.[1] Leviton Live Chicago, which is a Leviton Customer Experience Center, is one of Leviton's premier sales and experience centers in the United States. According to Defendant, "[e]nd-users, architects, builders, consultants, contractors, distributors and other partners regularly leverage Leviton LIVE as an immersive platform to drive mutual outcomes. The various scenes represent a variety of commercial and residential settings demonstrating how Leviton innovation transforms a space from ordinary to extraordinary." https://www.leviton.com/en/docs/LEV-Chicago-LIVE-Invitation-Only-Web.pdf (last accessed September 8, 2023).

12. Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

---

[1] *See* https://www.leviton.com/en/company/about-leviton/locations.

## THE ACCUSED PRODUCTS

13. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

14. Based upon public information, Leviton owns, operates, advertises, and/or controls the website https://www.leviton.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services. *See* **Exhibit F**, **Exhibit M**, **Exhibit N**.

15. Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its Smart Home control platform and systems, including but not limited to those products and services offered under the Decora brand name. *See id.*[2]

16. Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes Leviton's Smart Home control platform and systems, which includes, but is not limited to, the Decora Smart® Devices (and their Wi-Fi, Zigbee, and/or Z-Wave/Z-Wave Plus capabilities), including but not limited to the Decora Smart® Switches, Dimmers, Plugs, Motion Sensors, Outlets, Smart Scene Controller Switches, Smart Fan Speed Controllers, the Leviton Smart Load Center, the Leviton Smart Breaker, the Smart Breaker Data Hub, the My Leviton Cloud Service, the My Leviton App, and associated phone apps and website functionality, and associated hardware, software and applications (the "Accused Products"). *See id*.

17. Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for controlling home systems. *See* **Exhibit G**, **Exhibit H**, **Exhibit I**, **Exhibit J**, **Exhibit K**, **Exhibit L**.

18. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents. According to Defendant,

---

[2] *See also* http://www.leviton.com/en/company/about-leviton/where-to-buy.

https://www.leviton.com/en/docs/LEV-Chicago-LIVE-Invitation-Only-Web.pdf (last accessed September 8, 2023) ("End-users, architects, builders, consultants, contractors, distributors and other partners regularly leverage Leviton LIVE as an immersive platform to drive mutual outcomes. The various scenes represent a variety of commercial and residential settings demonstrating how Leviton innovation transforms a space from ordinary to extraordinary.").

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,801,933**

19. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

20. The USPTO duly issued U.S. Patent No. 6,801,933 (hereinafter, the "'933 patent") on October 5, 2004, after full and fair examination of Application No. 09/644,054 which was filed on August 23, 2000. *See* **Ex. A** at A-1.

21. IoT Innovations owns all substantial rights, interest, and title in and to the '933 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

22. The claims of the '933 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

23. The written description of the '933 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

24. Defendant has directly infringed one or more claims of the '933 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

25. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '933 patent.

26. For example, Defendant, using the Accused Products, performs a method, comprising receiving a request for data; producing a current state based on the request; determining a next state based on the current state; caching data based on the current state and the next state; and associating the request with a user of an application having a plurality of states, wherein the user is located in one of the plurality of states. *See, e.g.*, **Ex. F**, **Ex. M**, **Ex. N**.

27. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '933 patent.

28. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,304,570**

29. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

30. The USPTO duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on December 4, 2007, after full and fair examination of Application No. 11/200,611 which was filed on August 10, 2005. *See* **Ex. B** at B-1. A Certificate of Correction was issued on November 4, 2008. *See id*. at B-15.

31. IoT Innovations owns all substantial rights, interest, and title in and to the '570 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

32. The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

33. The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

34. Defendant has directly infringed one or more claims of the '570 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

35. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '570 patent.

36. For example, Defendant, using the Accused Products, performs a method for providing context-based, hierarchical security for a mobile device, the method comprising storing a hierarchy of security actions for at least one of protecting data stored on a mobile device and preventing unauthorized use of the mobile device, the hierarchy including a plurality of security levels, each security level including at least one context-based security action; performing at least one security action associated with a first security level in response to the existence of a first context associated with the first security level; and performing at least one security action

associated with a second security level in response to the existence of a second context associated with the second security level. *See, e.g.*, **Ex. F**, **Ex. M**, **Ex. N**.

37. Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '570 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '570 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '570 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '570 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. G**, **Ex. H**, **Ex. I**, **Ex. J**, **Ex. K**, **Ex. L**.

38. Defendant has also indirectly infringed by contributing to the infringement of the '570 patent. Defendant has contributed to the direct infringement of the '570 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 1. The

special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See, id*.

39. Defendant had knowledge of the '570 patent at least as of the date when it was notified of the filing of this action.

40. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations' patent rights.

41. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

42. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

43. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

44. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '570 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The

public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,379,464

45. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

46. The USPTO duly issued U.S. Patent No. 7,379,464 (hereinafter, the "'464 patent") on May 27, 2008, after full and fair examination of Application No. 10/306,504 which was filed on November 27, 2002. *See* **Ex. C** at C-1.

47. IoT Innovations owns all substantial rights, interest, and title in and to the '464 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

48. The claims of the '464 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

49. The written description of the '464 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50. Defendant has directly infringed one or more claims of the '464 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

51. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '464 patent.

52. For example, Defendant, using the Accused Products, performs a method comprising selecting a user's communications device from a plurality of communications devices to communicate data between a personal digital gateway and the selected communications device, the data associated with a common user of the personal digital gateway and of the selected communications device; storing profiles for each of the user's communications devices; retrieving a profile associated with the selected communications device; interpreting the data according to a rule-based engine to categorize the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; processing the data according to an edge side assembler; and communicating the data and the profile to the selected communications device. *See, e.g.*, **Ex. F**, **Ex. M**, **Ex. N**.

53. Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '464 patent by inducing others to directly infringe the '464 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '464 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '464 patent, including, for example, claim 1 of the '464 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '464 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '464 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. G**, **Ex. H**, **Ex. I**, **Ex. J**, **Ex. K**, **Ex. L**.

54. Defendant has also indirectly infringed by contributing to the infringement of the '464 patent. Defendant has contributed to the direct infringement of the '464 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '464 patent, including, for example, claim 1 of the '464 patent. The special features constitute a material part of the invention of one or more of the claims of the '464 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See id*.

55. Defendant had knowledge of the '464 patent at least as of the date when it was notified of the filing of this action.

56. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations' patent rights.

57. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

58. Defendant's direct infringement of one or more claims of the '464 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

59. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '464 patent.

60. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

61. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '464 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,394,798**

62. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

63. The USPTO duly issued U.S. Patent No. 7,394,798 (hereinafter, the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694 which was filed on October 13, 2004. *See* **Ex. D** at D-1.

64. IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

65. The claims of the '798 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, and security of communications devices.

66. The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

67. Defendant has directly infringed one or more claims of the '798 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

68. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 16 of the '798 patent.

69. For example, Defendant, using the Accused Products, performs a method for controlling a network system comprising temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group. *See, e.g.*, **Ex. F**, **Ex. M**, **Ex. N**.

70. Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '798 patent by inducing others to directly infringe said claims. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '798 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '798 patent. Defendant's inducement is ongoing. *See, e.g.*, **Ex. G**, **Ex. H**, **Ex. I**, **Ex. J**, **Ex. K**, **Ex. L**.

71. Defendant has also indirectly infringed by contributing to the infringement of the '798 patent. Defendant has contributed to the direct infringement of the '798 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent. The special features constitute a material part of the invention of one or more of the

claims of the '798 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See id*.

72. Defendant had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

73. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations' patent rights.

74. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

75. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

76. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '798 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

78. Plaintiff repeats and re-alleges the foregoing allegations as though fully set forth in their entirety.

79. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* **Ex. E** at E-1.

80. IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

81. The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the setting up of applications involving shared application data.

82. The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83. Defendant has directly infringed one or more claims of the '428 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

84. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 14 of the '428 patent.

85. For example, Defendant, using the Accused Products, performs a method comprising receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion

of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation. *See, e.g.*, **Ex. F**, **Ex. M**, **Ex. N**.

86. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

87. IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

88. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

89. IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

    a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

    b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries,

      parents, and all others acting in concert therewith from infringement of the '570 patent, the '464 patent, and the '798 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '570 patent, the '464 patent, and the '798 patent by such entities;

c.    Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '570 patent, the '464 patent, and the '798 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.    All other and further relief as the Court may deem just and proper under the circumstances.

| | |
|---|---|
| Dated: September 12, 2023 | Respectfully submitted, |
| *Pro Hac Vice* Motions Forthcoming | */s/ Timothy J. Haller* |
| | Timothy J. Haller (*Local Counsel*) |
| James F. McDonough, III (GA 117088) | HALLER LAW PLLC |
| ROZIER HARDT MCDONOUGH PLLC | 230 E Delaware Pl, Ste 5E |
| 659 Auburn Ave NE, Unit 254 | Chicago, IL 60611 |
| Atlanta, GA 30312 | Phone: (630) 336-4283 |
| Phone: (470) 480-9505 | haller@haller-iplaw.com |
| jim@rhmtrial.com | |

C. Matthew Rozier (CO 46854)
ROZIER HARDT MCDONOUGH PLLC
500 K St, 2nd Fl
Washington, DC 20005
Phone: (720) 820-3006
matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)
ROZIER HARDT MCDONOUGH PLLC
712 W 14th St, Ste C
Austin, X 78701
Phone: (210) 289-7541
hardt@rhmtrial.com

***Attorneys for Plaintiff,***
***IoT Innovations LLC***